UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

WILBERT ROBERTSON                    CIVIL ACTION NO. 15-cv-2678

VERSUS                               JUDGE FOOTE

GARY LOFTIN, ET AL                   MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Wilbert Robertson ("Plaintiff") was convicted in Caddo Parish in the mid-1980s of aggravated burglary and aggravated rape, and any appeals or habeas proceedings have long been completed.  A civil rights organization reviewed the use of peremptory challenges in Caddo Parish between 2003 and 2012 and issued a report that suggested Caddo prosecutors during that time were more than three times as likely to strike black as non-black prospective jurors.

Plaintiff, joined by 12 other prisoners, filed a "Motion for Preliminary Injunction and Protection Order Over All Records."  It cites the report and asks for a preliminary injunction that orders the Clerk of Court and District Attorney ("DA") to provide all records related to jury selection, orders the defendants to stop purposefully excluding prospective black jurors on the basis of race, and orders a stop to an alleged racial coding system.  For the reasons that follow, it is recommended that the request for preliminary injunction be denied and that this civil action be dismissed.

**Relevant Facts**

**A. Procedural History**

Plaintiff entered a young woman's home, struck her, wrapped her head in sheets, and raped her.  He took money from her purse and threatened to kill her if she moved.  Petitioner was convicted of aggravated burglary and aggravated rape based on fingerprint evidence, a seminal fluid match, and the victim's identification of Plaintiff in photo and physical lineups.  Plaintiff was adjudicated an habitual offender and sentenced to life imprisonment plus a consecutive 50-year sentence.  State v. Robertson, 511 So.2d 1237 (La. App. 2d Cir. 1987), writ denied, 516 So.2d 366 (La. 1988).  Plaintiff filed a habeas corpus petition in this court in 1989, and it was denied on the merits.  Wilbert Robertson v. Warden, 89-cv-1058.  He did not raise a claim in that petition under Batson v. Kentucky, 106 S.Ct. 1712 (1986).

Research shows that Plaintiff has filed several post-conviction challenges and other actions in the state courts.  He led 15 other prisoners in a suit to seek a declaratory judgment that the Louisiana statute regarding the selection of grand jury foremen was unconstitutional.  The courts rejected the claim because the statute had been amended to cure the defect, and Plaintiff had not taken advantage of procedural opportunities to raise the issue in his criminal case.  Robertson v. Caddo Parish, 833 So.2d 1139 (La. App. 2d Cir. 2002), writ denied, 870 So.2d 284 (La. 2004).

Plaintiff has now joined with 12 other prisoners and filed in this court a "Motion for Preliminary Injunction and Protection Order Over All Records."  The court found that the several plaintiffs could not properly join in one action, so a separate civil action was opened

for each of the prisoner/plaintiffs.  Several other prisoners also filed a virtually identical motion, and there are 38 such motions now pending under separate case numbers.  All of those cases were assigned to the same judge and magistrate judge for the sake of consistency and efficiency. This is the first of the cases to be addressed.

### B. The Blackstrikes Report

Reprieve Australia, a civil rights organization, released its "Blackstrikes" report in August 2015.  The organization reviewed the use of peremptory challenges in hundreds of trials held in Caddo Parish between 2003 and 2012.  The report concluded that the Caddo Parish prosecutors (on average) used peremptory strikes against otherwise qualified black jurors 46% of the time, while using peremptory strikes against non-black jurors only 15% of the time.  That is, prosecutors appeared to be more than three times as likely to strike black than non-black prospective jurors.

The Reprieve Australia report has a section titled "Coding the Data" that explains how it identified and grouped the prospective jurors.  The report states that it used the same categories used by the Clerk of Court and Secretary of State.  For example, black (B), white (W), or American Indian (AI).  Other codes used include peremptorily struck by the State (SP) or peremptorily struck by the defense (DP). Plaintiff refers to this portion of the report and concludes that it means the Clerk of Court has been improperly "race coding" the data for prospective jurors, which made it easier for prosecutors to discriminate.

Although it is not necessary to resolve the issue today, it appears that Plaintiff may have misunderstood this portion of the report.  The report does not suggest that there were

different color cards printed for jurors of different races or a similar practice that was designed to foster discrimination.  Rather, it appears that the report is simply explaining how Reprieve Australia collected and recorded its data.  It is common for the Clerk of Court to note in the minutes or elsewhere the race of the prospective and selected jurors.  If this is not done, then it is virtually impossible to conduct an investigation such as was done by Reprieve Australia or to successfully raise a challenge on appeal under <u>Batson</u>.

A state appellate court recently noted that its review of a <u>Batson</u> challenge was made difficult by the lack of a clear record on the races of the potential and seated jurors.  The court said that it was the best practice for a trial court to have potential jurors state their races and gender on the record so that a reviewing court is aware of how the jurors identify themselves.  <u>State v. Thompson</u>, 163 So.3d 139, 191 (La. App. 2d Cir. 2015).  <u>See also</u> <u>State v. Dominguez</u>, 148 So.3d 648, 657 (La. App. 5th Cir. 2014), <u>writ</u> <u>denied</u>, 170 So.3d 982 (La. 2015) (noting difficulty in assessing <u>Batson</u> challenge when record was unclear as to race of stricken jurors) and <u>White v. Stephens</u>, 566 Fed. Appx. 335, 338 (5th Cir. 2014) (inability to determine race of comparator jurors cited among reasons to deny <u>Batson</u> habeas claim).  Accordingly, the simple fact that court records include notation of the race of the jurors is not itself problematic.  There may be certain "coding" practices that can be problematic, but Plaintiff has not explained how the description in the Reprieve Australia report gives rise to such concerns.

### C. Allegations Made; Relief Requested

Plaintiff alleges in his motion that the DA's discriminatory intent denied him equal protection of the laws when he was put on trial before a jury from which members of his race had been purposefully excluded on the basis of race.  Plaintiff asserts that the discrimination in jury selection violated his rights to due process, equal protection, and to a trial made up of a fair cross-section of the community.  He also claims that he has suffered physically from his resulting confinement, and he has suffered embarrassment and humiliation because neighbors, friends, and the community were aware of his confinement.  Finally, Plaintiff expresses concern about the rights of prospective jurors and asks that they be joined as plaintiffs in this matter.

The precise relief sought by Plaintiff is an important question.  He asserts in paragraph 11 that he wants the court to "issue a protect order over all documents."  He then asks that the Caddo Parish Clerk of Court provide him a copy of (1) a list of the general venire of 300 persons, (2) the list of persons selected by the Clerk of Court for the general venire in his case, (3) the name and address of each person on the list prepared by the Clerk of Court, (4) the jury selection charts prepared by the minute clerks, (5) the trial court's official jury charts, (6) the jury pool list, (7) the tales jury venire, (8) the petit jury venire, and (9) the strike sheets used by the prosecutor.

Plaintiff concludes by asking the court to "issue an order preliminary injunction enjoining the defendants Dale Cox, District Attorney and the Clerk of Court, Gary Loftin; and to provide records to all the named plaintiffs."  Plaintiff adds that "in addition, or in the

alternative," he asks the court to "require the defendants immediately to stop purposefully excluding black prospective jurors on the basis of race" and "to stop the coding system to race, because it makes easier for those discriminate who are of the mind to discriminate."

**Analysis**

### A. No Complaint or Petition

If a plaintiff wishes to assert a civil rights or other civil claim, he commences the civil action by filing a complaint.  Fed. R. Civ. Pro. 3.  The complaint must contain a short and plain statement of (1) the grounds for the court's jurisdiction and (2) the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought. Fed. R. Civ. Pro. 8.  If a person wishes to ask the federal court for habeas corpus relief from a state court conviction, he commences the action by filing a petition that specifies the grounds for relief, states the relief requested, and is presented on the form prescribed the court.  Rule 2 of Rules Governing Section 2254 Cases in the U. S. District Courts.

Plaintiff did not file a complaint or petition.  He simply filed a stand-alone motion for preliminary injunction, which is not contemplated by the rules.  Local Rule 65.1 requires that an application for a preliminary injunction "shall be made in a document separate from the complaint."  This assumes that a proper complaint has been filed to commence the action. That is important because a mere request for an injunction does not automatically provide a basis for the federal court to exercise jurisdiction, and the court lacks authority to issue an injunction if the party making the request does not have a cognizable cause of action.

The court is willing to overlook the absence of a formal complaint or petition because Plaintiff is proceeding without counsel.  A document filed pro se is to be liberally construed, and a pro se complaint must be held to less stringent standards than formal pleadings drafted by lawyers.  Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007); Fed. R. Civ. Pro. 8(e) ("Pleadings must be construed so as to do justice.").  Based on those principles, Plaintiff's motion will be given the benefit of being viewed as a complaint or petition.  That does not mean, however, that the court may excuse Plaintiff from having a basis for subject matter jurisdiction or stating a cognizable cause of action.

## B. Subject Matter Jurisdiction

Plaintiff's motion includes a section headed "Statement of Jurisdiction."  It asserts that the court has jurisdiction pursuant to Federal Rule of Civil Procedure 65(a), but "Rule 65 does not confer either subject-matter or personal jurisdiction on the court."  11A Wright, Miller & Kane, Federal Practice and Procedure, § 2941(3d ed.).  Rule 65 "determines the methods and rules pertaining to a court's injunctive power [but] confers no additional jurisdiction power."  Union Pacific R. Co. v. Harris County, 790 F. Supp. 2d 568, 574 (S.D. Tex. 2011), citing Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana, 762 F.2d 464, 470 (5th Cir. 1985) ("Rule 65 confers no jurisdiction").  Plaintiff's motion does not assert any other basis for subject matter jurisdiction.

The court may exercise federal question jurisdiction under 28 U.S.C. § 1331 if the complaint asserts a claim that arises under federal law.  One possible basis for such jurisdiction, though not invoked by Plaintiff, is if habeas corpus relief is sought under 28

U.S.C. § 2254.  The court issued orders in some of the related cases and referred to the motion for preliminary injunction as a habeas corpus petition.  The prisoners responded with motions to correct the clerk's clerical error.  They were adamant the court should not treat their motions for preliminary injunction as petitions for habeas corpus relief.  The motions state: "Plaintiff is not filing a habeas corpus petition.  But, instead Plaintiff is filing a Motion for preliminary injunction with the Jurisdiction vested in this Honorable Court by virtue of this action pursuant to Rule 65(A) of the Federal Rule of Civil Procedure."  See, e.g., Louis Ruffins v. Caddo Parish Clerk of Court, 15-cv-2895 (Doc. 4).  Plaintiff has not submitted such a motion to correct in this case, but he has not specifically invoked 28 U.S.C. § 2254 or prayed for habeas relief from his convictions.   Accordingly, there is no basis to exercise subject matter jurisdiction based on the presence of a habeas claim.

It is possible that Plaintiff is attempting to assert a federal claim for a constitutional violation under 42 U.S.C. § 1983.  Plaintiff's motion refers to constitutional rights such as those protected by the Equal Protection Clause.  For reasons explained below, it is doubtful that Plaintiff can state a viable and procedurally proper claim of that kind.  But when a party asserts a federal claim, the court should address it on the merits rather than dismiss it for lack of jurisdiction unless the purported federal claim has no plausible foundation.  Williamson v. Tucker, 645 F.2d 404, 415-16 (5th Cir. 1981) en banc.  Plaintiff's reference to federal constitutional rights arguably fails the "no plausible foundation" standard in the context of this case, but the safer course is to proceed on the merits of the purported claims.

### C. Requirement of an Actionable Claim

#### 1. Introduction

The next issue is identifying what actionable claim, if any, Plaintiff has asserted. Plaintiff cannot obtain preliminary or any other injunctive relief unless he first establishes that he has a cause of action.  An injunction is a remedy that must be supported by an underlying cause of action, and the failure of asserted claims warrant dismissal of a claim for injunctive relief.  Crook v. Galaviz, 616 Fed. Appx. 747, 753 (5th Cir. 2015), citing Klay v. United Health Group, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004) ("[A]ny motion or suit for a traditional injunction must be predicated upon a cause of action ... There is no such thing as a suit for a traditional injunction in the abstract.").  The court has liberally reviewed Plaintiff's submission and, for the reasons set forth below, it has not found a basis for a viable cause of action, which means there are no grounds to issue injunctive relief.

#### 2. Habeas Corpus

Criminal defendants who are subject to the race-based exercise of peremptory challenges may seek federal habeas relief under Batson.  But Plaintiff does not request that the court vacate his mid-1980's convictions and, as noted above, prisoners in similar cases have been adamant that they are not pursuing habeas relief.  If Petitioner were pursuing such relief, he would face a number of obstacles.  There is no indication that Plaintiff preserved a Batson claim and exhausted his state court remedies on it.  There is very little likelihood that such a habeas claim would be timely under the one-year limitations period. Furthermore, the Reprieve Australia report examined trials between 2003 and 2012, which was long after

Plaintiff's trial in the 1980s.  Accordingly, there is no plausible basis to construe Plaintiff's motion as presenting a viable habeas corpus claim.

### 3. Section 1983

It is possible that Plaintiff is attempting to assert a claim under 42 U.S.C. § 1983 for violation of his constitutional rights during jury selection.  A claim under Section 1983, to the extent a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence, is generally precluded by Heck v. Humphrey, 114 S.Ct. 2364 (1994). The prisoner is not allowed to seek Section 1983 relief unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck, 114 S.Ct. at 2372.  "Thus, when a state prisoner seeks damages in a Section 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id.

If Plaintiff asserts that he is entitled to Section 1983 relief based on unconstitutional discrimination in the selection of his jury, success on that claim would imply the invalidity of his conviction.  Such a claim is therefore not cognizable under Heck unless it has already been set aside, and there is no indication in Plaintiff's filings that his conviction has been successfully vacated by one of the permitted means.  Heck is most often applied to claims for damages, but the principles of Heck also preclude claims for injunctive or declaratory

relied that attack a conviction or sentence. <u>Summers v. Eidson</u>, 206 Fed. Appx. 321 (5th Cir. 2006) (<u>Heck</u> "applies to injunctive as well as monetary relief"); <u>Shaw v. Harris</u>, 116 Fed. Appx. 499, 500 (5th Cir. 2004) (same); and <u>Kutzner v. Montgomery County</u>, 303 F.3d 339 (5th Cir. 2002) (<u>Heck</u> applied to attempt to compel state to produce evidence for DNA testing; claim was so intertwined with merits of the conviction as to require habeas treatment). Accordingly, to the extent Plaintiff asserts a Section 1983 claim for damages or injunctive relief, <u>Heck</u> requires it be dismissed with prejudice to being asserted again until the <u>Heck</u> conditions are met. <u>Johnson v. McElveen</u>, 101 F.3d 423, 424 (5th Cir.1996).

**D. No Case or Controversy for Injunctive Relief**

Plaintiff seeks an injunction enjoining the DA from purposefully excluding black prospective jurors on the basis of race. Assuming Plaintiff could overcome the issues discussed above, he does not present an actual case or controversy that would allow him to invoke the jurisdiction of the court for such relief. Abstract injury is not enough, and a plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct. The injury or threat of injury must be real and immediate, not conjectural or hypothetical. <u>City of Los Angeles v. Lyons</u>, 103 S.Ct. 1660, 1665 (1983).

The Court applied those principles in <u>O'Shea v. Littleton</u>, 94 S.Ct. 669 (1974), a case brought by a class of plaintiffs who alleged that black citizens and their supporters had been subjected to discriminatory sentencings, bond conditions, and the like by local judges. The Court held that injunctive relief was not available because there was not a sufficient prospect

of future injury, which rested on the likelihood that the plaintiffs themselves would again be arrested and charged with crimes and again be subjected to criminal proceedings before the same officers.  The rules were also applied in <u>Golden v. Zwickler</u>, 89 S.Ct. 956 (1969), where a unanimous court held that a former congressman did not state an adequate case or controversy in his challenge to a state statute that prohibited anonymous handbills, even though he had been convicted under the statute in the past, because he was unlikely to run for reelection.

The plaintiff in <u>Lyons</u> sought an injunction against a city policy that allowed the use of chokeholds even when police officers were not threatened by the use of deadly force.  The plaintiff and numerous other persons had been injured by the chokeholds, and 15 persons died.  As the case progressed, the chief of police prohibited the use of the bar-arm chokehold in any circumstances, and the Board of Police Commissioners imposed a moratorium on the carotid-artery chokehold except under circumstances where deadly force was authorized. The Court held that Mr. Lyons failed to demonstrate a case or controversy that would justify an injunction.  There was no real and immediate threat that he would again be stopped for a traffic violation, or any other offense, by an officer who would illegally choke him into unconsciousness without provocation or resistance on his part.  <u>Lyons</u>, 103 S.Ct. at 1667.

Standing to seek such equitable relief is jurisdictional and may be considered by the court *sua sponte*.  <u>Brown v. Edwards</u>, 721 F.2d 1442, 1446 (5th Cir. 1984). Plaintiff is serving a natural life (plus 50 years) sentence in the Louisiana State Penitentiary, which is located far from Caddo Parish.  Furthermore, there have been a number of changes in the

District Attorney's Office. Dale Cox, the District Attorney named in the motion, is no longer in office. James Stewart, an African-American, was elected to the position and took office in December 2015. Of the 12 assistant prosecutors listed in the Reprieve Australia study, the undersigned is of the belief that nine of them are no longer employed by DA Stewart. The only ones from the list who remain employed are the three with the lowest percentage of strikes of black jurors. There is, accordingly, no real and immediate threat that Plaintiff would in the future be subjected to an unlawful jury selection process in Caddo Parish.

### E. Mandamus

Prisoners have on occasion filed requests that the federal court issue a writ of mandamus to state court officials that directs them to provide the prisoner with a transcript of his trial proceeding or the DA's records. The Fifth Circuit has routinely affirmed the denial of such requests because "a federal court lacks the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought." Moye v. Clerk, DeKalb County Superior Court, 474 F.2d 1275 (5th Cir. 1973). Other cases include Love v. Wheeler, 24 F.3d 237 (5th Cir. 1994) (unpublished) (request for mandamus to provide state court record and DA records "amounts to a writ of mandamus against a state official, which is a remedy not authorized by Section 1983); Mahogany v. Muwwakkil, 259 Fed. Appx. 681 (5th Cir. 2007) (affirming denial of request to direct state court officials to provide copies of mental health records and addresses of certain witnesses); and Nabelek v. Cockrell, 61 Fed. Appx. 120 (5th Cir. 2003)

(no mandamus authority to order state officials to provide prisoner free copies to help prepare a habeas petition).

Plaintiff has no legal basis to seek a mandamus from this court that directs the state officials to provide him copies of court records.  Louisiana has liberal public records statutes that allow Plaintiff to request such copies.  He should direct his efforts to making a proper request in accordance with the state laws.

### F. Joinder of Excluded Jurors

Plaintiff asks that each prospective juror who was excluded due to race, religion, or other improper reason be joined as plaintiffs in this matter.  That is not appropriate.  Plaintiff has not established a viable claim on behalf of himself that would allow this matter to proceed, and he (as a non-attorney) may not represent the interests of others before the court.

Furthermore, there is a potential class action pending that is aimed at protecting the rights of jurors.  A group of citizens, represented by counsel, have filed a complaint for declaratory judgment and injunctive relief against the Caddo Parish DA in his official capacity.  They seek a declaration that the DA's custom or practice of exercising peremptory challenges violates their Fourteenth Amendment rights.  They seek injunctive relief against the practice and a declaration that a provision of the Louisiana Code of Criminal Procedure is unconstitutional because it allegedly makes it easier to discriminate in using peremptory challenges.  Pipkins v. Stewart, 15-cv-2722.

**Conclusion**

The court has reviewed Plaintiff's motion in search of a basis for subject matter jurisdiction and a cause of action.  There is no apparent basis for a habeas corpus claim, a cognizable Section 1983 claim, or grounds for mandamus.  A mere stand-alone claim for a preliminary injunction does not state a claim or provide the court subject matter jurisdiction.  There is also no case or controversy that would allow Plaintiff to obtain an injunction against the current practice of the Caddo Parish DA with respect to the exercise of peremptory challenges.  For all of these reasons, the motion, even when assessed as a complaint, fails to state a viable claim for any form of relief.  It is possible that Plaintiff could obtain some of the relief he seeks by pursuing appropriate remedies in the state court system, so his motion/complaint should be dismissed without prejudice so as not to create an obstacle to such efforts.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction and Protection Order Over All Records be denied and that this action be dismissed without prejudice.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another

party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 4th day of March, 2016.

Mark L. Hornsby
U.S. Magistrate Judge